**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:22-cr-00044-TMB-MMS |
| Plaintiff, | |
| v. | ORDER ON FRANK COMA'S MOTION TO SEVER [DKT. 345]; MICHAEL COMA'S MOTION IN SUPPORT OF JOINDER [DKT. 354]; and DAVID VALLEY'S MOTION TO SEVER [DKT. 352] |
| FRANK JOSEPH COMA, MICHAEL JOSEPH COMA, and DAVID PATRICK VALLEY, | |
| Defendants. | |

## I.    INTRODUCTION

The matter comes before the Court on two motions to sever filed by Defendants Frank Joseph Coma ("F. Coma") and David Patrick Valley ("Valley).[1] Defendant Michael Joseph Coma ("M. Coma") filed a Motion in Support of Joinder to F. Coma's Motion to Sever.[2] The United States filed a single Omnibus Response in Opposition to Motions to Sever ("Opposition").[3] The Court finds that the motions to sever are suitable for disposition without oral argument. For the reasons discussed below, F. Coma's Motion is **DENIED** and Valley's Motion is **DENIED.**

## II.    BACKGROUND

Defendants F. Coma, M. Coma, and Valley are charged with one count of attempted possession with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), 846 pursuant to an Indictment issued May 18, 2022.[4] In November 2021, United States

---

[1] Dkts. 345 (F. Coma's Motion to Sever); and 352 (Valley's Motion to Sever).
[2] Dkt. 354 (M. Coma's Motion in Support of Joinder).
[3] Dkt. 356 (Opposition).
[4] Dkt. 2 (Indictment).

1

Postal Inspection Service Inspector Andrew Grow ("USPIS Grow"), acting on a tip from an Alaska State Trooper, isolated a parcel sent to a U.S. Post Office box held by Amanda Pikus, an incarcerated person, in Kodiak.[5] A K-9 unit responded to the parcel, and law enforcement searched it pursuant to a warrant, finding 11.63 grams of counterfeit "M30" pills believed to contain fentanyl and 59 grams of methamphetamine.[6] Pursuant to the warrant, law enforcement replaced the controlled substances with a representative sample, an electronic monitoring device, and "Clue Spray," and arranged a controlled delivery.[7]

On December 8, 2021, law enforcement officers observed F. Coma and Veronica Naughton enter the post office, approach Pikus's P.O. box, exit carrying the subject parcel, and leave in a vehicle driven by Marc Vaudrin.[8] Officers followed the vehicle to a nearby McDonald's restaurant, Naughton exited the vehicle without the parcel, and F. Coma and Vaudrin continued driving.[9] While following the vehicle, officers received a "faint alert" from the monitoring device but were unable to determine whether the parcel had been opened.[10]

Officers continued to follow the vehicle to an apartment complex, where they observed F. Coma exit the vehicle, briefly enter Unit #3 (F. Coma's apartment), exit, and enter Unit #2 (Valley's apartment) appearing to carry a bulky item under his sweatshirt.[11] Electronic monitoring indicated the parcel was in Unit #2.[12]

---

[5] Dkt. 296 (Final Report and Recommendation on F. Coma's Motion to Suppress) at 5.
[6] *Id.* at 6.
[7] *Id.*
[8] *Id.* at 7.
[9] *Id.*
[10] *Id.*
[11] *Id.* at 8.
[12] *Id.*

At around 2:57 p.m., officers knocked and announced at Unit #2, and Valley opened the door.[13] Officers detained Valley, F. Coma, and M. Coma outside Unit #2 pending a separate search warrant.[14] Officers then performed a security sweep of Unit #2 and found an opened parcel in a garbage can.[15] F. Coma, M. Coma, and Valley were separately brought into the bathroom of Unit #2 and officers examined their hands with ultraviolet light.[16] F. Coma's and M. Coma's hands tested positive for Clue Spray, but Valley's did not.[17]

Officers brought M. Coma outside, seated him in the back of the patrol car, and placed a backpack he was wearing in the front seat.[18] An officer searched the backpack and found a digital scale, two small "dime" bags, and a cellphone.[19] M. Coma was arrested and taken into custody.[20]

Officers demanded F. Coma provide the keys to Unit #3 under threat that they would forcibly enter the unit.[21] F. Coma provided the keys, and officers searched Unit #3 and found methamphetamine.[22] When applying for search warrants for Units #2 and #3, officers attested to the preceding events, the presence of methamphetamine in Unit #3, and that F. Coma had consented to the search of Unit #3.[23] Both warrants were granted, and F. Coma was arrested.[24]

---

[13] *Id.*; Dkt. 297 at 3.
[14] Dkt. 297 at 3; Dkt. 296 at 8.
[15] Dkt. 296 at 8.
[16] *Id.*; Dkt. 298 at 3–4.
[17] Dkt. 296 at 8; Dkt. 298 at 3–4.
[18] Dkt. 298 at 4.
[19] *Id.*
[20] *Id.*
[21] Dkt. 296 at 8.
[22] *Id.*
[23] *Id.* at 8–9.
[24] *Id.* at 9.

3

F. Coma, M. Coma, and Valley, were handcuffed until at least 4:00 p.m.[25] During this time, officers informed Valley that he was not free to leave and advised him of his *Miranda* rights.[26] Officers also seized his cellphone without his consent and obtained a search warrant for it seven days later on December 15, 2021.[27] Valley was not taken into custody on December 8, 2021, but was arrested approximately six months later.[28]

### A. F. Coma's Motion to Sever

On October 31, 2024, Frank Coma filed a Motion to Sever under Federal Rule of Criminal Procedure 14 and the Confrontation Clause of the Sixth Amendment.[29] F. Coma argues that severance is necessary due to mutually antagonistic defenses, the "spillover effect" of evidence against M. Coma and Valley that would prejudice F. Coma, and Confrontation Clause issues raised by the possible admission of text messages sent by Valley.[30] As to mutually antagonistic defenses, F. Coma argues that the "only viable defense for M. Coma and Valley is to blame F. Coma."[31] F. Coma argues that M. Coma and Valley's likely defense of disavowing knowledge of the package is "completely irreconcilable" with any theory of F. Coma's innocence.[32] F. Coma also argues that he will be prejudiced by evidence the Government is likely to introduce against M. Coma and Valley.[33] He asserts that the "spillover effect" of this evidence is prejudicial because the jury will use the evidence to draw negative inferences against F. Coma.[34] Finally, F. Coma argues that the

---

[25] Dkt. 297 at 3.
[26] *Id.*
[27] *Id.*
[28] *Id.* at 4.
[29] Dkt. 345.
[30] Dkt. 345 at 1–2.
[31] *Id.* at 8.
[32] *Id.* at 9.
[33] *Id.*
[34] *Id.* at 10.

introduction of a text exchange between M. Coma and Valley, apparently discussing a drug acquisition, violates his rights under the Confrontation Clause.[35] Upon the Court's order, F. Coma filed, *ex parte,* additional information with respect to his anticipated defense.[36]

### B. M. Coma's Joinder in Motion to Sever

On November 16, 2024, M. Coma filed a motion joining F. Coma's Motion to Sever as to the factual recitation and associated exhibits as well as F. Coma's arguments pertaining to severance generally, mutually antagonistic defenses, and the "spillover effect" of evidence admissible against co-defendants.[37] In support of his joinder, M. Coma argues that "[t]he evidence against M. Coma is all consistent with a drug user, but not a drug dealer."[38] M. Coma asserts that the evidence against Valley, which M. Coma argues shows evidence of drug trafficking, could "allow the jury to draw negative inferences about M.[] Coma."[39] M. Coma also states that Valley and F. Coma are likely to argue that each had no knowledge of the contents of the package.[40] Resultingly, M. Coma argues that in order for the jury to believe M. Coma's defense, that he had no involvement with the package, the jury would have to disbelieve F. Coma and Valley's arguments.[41] M. Coma therefore argues that his defense is mutually antagonistic with his codefendants and severance is required.[42]

---

[35] *Id.* at 10–11.
[36] Dkt. 360 (Text Order as to F. Coma's offered "theory of innocence" to be filed *ex parte*).
[37] Dkt. 354 (M. Coma's Joinder in Motion to Sever at Docket 345) at 2.
[38] *Id.* at 5.
[39] *Id.* at 6.
[40] *Id.* at 7.
[41] *Id.* at 7–8.
[42] *Id.* at 8.

## C. Valley's Motion to Sever

Valley filed a separate Motion to Sever on November 15, 2024.[43] In his Motion, Valley argues that Valley's defense is mutually antagonistic to those of his codefendants and that severance is required to allow for exculpatory testimony from his codefendants, to protect his Confrontation Clause rights, and to avoid undue prejudice to Valley.[44] First, Valley states that he intends to assert that "F.[] Coma alone, or in conjunction with his brother, M.[] Coma, procured the parcel" without any involvement from Valley.[45] Valley argues that his defense of being "wholly unaware of the parcel or its contents[] necessarily results in the conviction of his co-defendant(s)."[46] Next, Valley argues that he must be severed to allow him to call F. Coma and M. Coma to testify "as to whether [] Valley was involved with and/or aware of the presence of the parcel and its contents on December 8[], 2021."[47] Valley "has a good faith basis to believe that [F. Coma and M. Coma] will testify consistently with [Valley's] position."[48] Valley argues that if the three codefendants are tried together F. Coma and M. Coma will assert their Fifth Amendment rights not to testify.[49] Valley also argues that separate trials would allow Valley to confront M. Coma about text messages between M. Coma and Valley that would not be admissible in a joint

---

[43] Dkt. 352 (Valley's Motion to Sever).
[44] *Id.* at 8, 11–13.
[45] *Id.* at 9.
[46] *Id.* at 10.
[47] *Id.* at 11.
[48] *Id.* at 12.
[49] *Id.*

trial under the rule against hearsay.[50] Finally, Valley asserts that severance is necessary because Valley will be prejudiced "by association" with the evidence presented against his codefendants.[51]

### D. United States' Opposition

On November 21, 2024, the United States filed its Omnibus Opposition to the motions to sever.[52] The Government argues that each of the defendants "failed to overcome the presumption that jointly charged defendants be jointly tried."[53]

#### 1. The Government's Response to F. Coma's Motion to Sever

The Government asserts that F. Coma does not present compelling circumstances that require separate trials.[54] As to mutually antagonistic defenses, the Government argues that F. Coma failed to show that Valley and M. Coma's likely defenses were truly irreconcilable with the possibility of F. Coma's acquittal and that any prejudice could be cured with jury instructions.[55] In response to F. Coma's argument that F. Coma would be prejudiced by "spillover" evidence, the Government argues that the risk of prejudice can be cured by jury instructions and that evidence of M. Coma and Valley's possible drug transactions could still be introduced at a separate trial for F. Coma.[56] Finally, the Government argues that a joint trial does not violate F. Coma's Confrontation Clause rights because the text messages the Government may introduce are not testimonial, and therefore do not violate the Confrontation Clause and that F. Coma has not shown that Valley is likely to waive his Fifth Amendment rights and testify at a separate trial.[57]

---

[50] *Id.* at 12–13.
[51] *Id.* at 14–15.
[52] Dkt. 356.
[53] *Id.* at 2.
[54] *Id.* at 10.
[55] *Id.* at 12.
[56] *Id.* at 13.
[57] *Id.* at 14–16.

### 2.   The Government's Response to M. Coma's Motion in Support of Joinder

With respect to additional arguments made by M. Coma in his Motion in Support of Joinder to F. Coma's Motion to Sever, the Government argues that any potential prejudice from "spillover" evidence can be cured with jury instructions and that M. Coma's defense is not irreconcilable with those of his codefendants.[58]

### 3.   The Government's Response to Valley's Motion to Sever

The Government argues that Valley has also not met his burden to show severance is necessary.[59] The Government maintains that, like his codefendants, Valley's assertion of mutually antagonistic defenses does not require severance because "the fact that each defendant intends to disavow knowledge of and involvement with the package does not require severance."[60] As to possibly exculpatory evidence, the Government argues that Valley "provides no support for this anticipated testimony" and has not made a sufficient showing that M. Coma or F. Coma would testify at a separate trial.[61] The Government also asserts that the rule against hearsay does not prohibit the introduction of text messages between M. Coma and Valley and that Valley does not have a right under the Confrontation Clause to confront M. Coma about non-testimonial statements.[62] Finally, the Government states that Valley's assertion that the evidence of M. Coma and F. Coma's involvement with drugs would prejudice Valley is unfounded.[63] The Government argues that in addition to the evidence of Valley's involvement in drug trafficking, evidence against M. Coma and F. Coma would still be admissible in a separate trial.[64]

---

[58] *Id.* at 16–17.
[59] *Id.* at 18.
[60] *Id.* (citing *United States v. Throckmorton*, 87 F.3d 1069, 1072 (9th Cir. 1996)).
[61] *Id.* at 19.
[62] *Id.* at 19–20.
[63] *Id.* at 20.
[64] *Id.* at 20–21.

*E. Valley's Reply*

David Valley filed a Reply to the Government's Opposition on December 13, 2024.[65] Valley provides additional analysis as to his mutually antagonistic defenses argument, stating that the facts in this case are analogous to *United States v. Mayfield*, in which the Ninth Circuit found reversable error for failure to sever the defendants.[66] Valley also asserts that severance is necessary because (1) Valley suspects F. Coma will attempt to show that Valley directed the acquisition of the parcel, not F. Coma, and (2) Valley's counsel will "also be serving as a prosecutor of F.[] Coma, cross-examining the Government's witnesses about F.[] Coma's clear demonstration of custody and control over the package."[67] Finally, Valley provides additional evidence as to his good faith intention to call M. Coma and F. Coma to testify at a separate trial and Valley's belief that this evidence would be exculpatory.[68]

### III.    LEGAL STANDARD

Federal Rule of Criminal Procedure 8 permits joinder of offenses and defendants. Separate offenses may be joined on one charging document if the offenses "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."[69] Multiple defendants may be charged together "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions,

---

[65] Dkt. 362 (Valley's Reply to the Government's Opposition).
[66] *Id.* at 1.
[67] *Id.* at 3.
[68] *Id.* at 4.
[69] Fed. R. Crim. P. 8(a).

9

constituting an offense or offenses."[70] Joinder is the rule rather than the exception.[71] In conspiracy cases, defendants jointly charged are presumed to be jointly tried.[72]

Severance under Rule 14 is appropriate "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants."[73] A defendant seeking severance bears the heavy burden of showing that joinder is "so manifestly prejudicial that it outweigh[s] the dominant concern with judicial economy and compel[s] the exercise of the court's discretion to sever."[74] To show "clear," "manifest," or "undue" prejudice, a defendant must "show violation of one of his substantive rights by reason of the joint trial: unavailability of full cross-examination, lack of opportunity to present an individual defense, denial of Sixth Amendment confrontation rights, lack of separate counsel among defendants with conflicting interests, or failure properly to instruct the jury on the admissibility of evidence as to each defendant."[75]

*A. Mutually Antagonistic Defenses*

Defendants should be severed when a defendant "shows that the core of the co-defendant's defense is so irreconcilable with the core of his own defense that the acceptance of the co-defendants' theory by the jury precludes acquittal of the defendant."[76] A mutually exclusive defense "prevent[s] the jury from making a reliable judgment" about the guilt of one or more of the codefendants.[77] Severance is necessary when the only logical outcome of a codefendant's

---

[70] Fed. R. Crim. P. 8(b).
[71] *United States v. Armstrong*, 621 F.2d 951, 954 (9th Cir. 1980).
[72] *United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir. 1980).
[73] *Zafiro v. United States*, 506 U.S. 534, 539 (1993).
[74] *United States v. Lopez*, 477 F.3d 1110, 1116 (9th Cir. 2007) (quoting *United States v. Brashier*, 548 F.2d 1315, 1323 (9th Cir. 1976)); *see also, Armstrong*, 621 F.2d at 954.
[75] *Escalante*, 637 F.2d at 1201.
[76] *United States v. Mayfield*, 189 F.3d 895, 899 (9th Cir. 1999) (quoting *Throckmorton*, 87 F.3d at 1072).
[77] *Id.*

10

defense is that one or all of the other codefendants are guilty of the charged offense(s).[78] For example, in *United States v. Tootik*, defendants Charles Frank and Moses Tootik were jointly tried and convicted of a stabbing which occurred while the two defendants were alone with the victim; each defendant claimed the other committed the assault.[79] The Ninth Circuit held that severance was necessary because "[e]ach defense theory contradicted the other in such a way that the acquittal of one necessitates the conviction of the other."[80]

Under some circumstances, "counsel's arguments may be so blatantly prejudicial that reversal is warranted even if they are not supported by sizable evidence."[81] When a codefendant's counsel makes "improper arguments" the district court has the responsibility to "sternly admonish[] the jury."[82] When counsel tells the district court that his or her client's defense is to "prosecute" a codefendant, the district court is on notice that it is "required to grant [a defendant's] severance motions or employ other means of stemming the prejudice" born of a mutually exclusive defense.[83]

### B. *"Spillover Effect" of Prejudicial Evidence Against Another Defendant*

A primary consideration in assessing prejudicial effect in a joint trial is whether the jury can reasonably be expected to separate the evidence as it relates to the separate defendants.[84] Asserting

---

[78] *United States v. Tootik*, 952 F.2d 1078, 1081 (9th Cir. 1991) ("For a proclamation of innocence to constitute an accusation, the facts of the dispute must be closed in a fashion that does not suggest the intervention of some unknown actor.").

[79] *Id.* at 1080–81.

[80] *Id.* at 1081; *see also Mayfield*, 189 F.3d at 900 ("It is beyond dispute that, if the jury accepted Gilbert's defense, which was that Mayfield was the drug ringleader who had control over the drugs, it necessarily had to convict Mayfield.").

[81] *Mayfield*, 189 F.3d at 905.

[82] *Id.*

[83] *Id.* at 189 F.3d at 900 n.1.

[84] *Escalante*, 637 F.2d at 1201; *United States v. Mejia*, No. 3:13-CR-00034-TMB, 2013 WL 3791472, at *2 (D. Alaska Jul. 19, 2013).

that the prosecutor's case is stronger against a codefendant is insufficient to demonstrate manifest or undue prejudice.[85] The prejudicial effect of evidence relating to guilt of a codefendant is generally held to be neutralized by careful instruction by the trial judge.[86] A defendant seeking severance has the burden to show "clear or manifest prejudice" from a joint trial.[87]

### C. Exculpatory Testimony and the Defendants' Confrontation Clause Rights

The need for exculpatory testimony and confrontation rights are possible grounds for severance.[88] "[A] defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial."[89] However, the "moving defendant must show more than that the offered testimony would benefit him; he must show that the codefendant's testimony is 'substantially exculpatory' in order to succeed."[90] A district court must consider "the exculpatory nature and effect of the desired testimony—in other words, the *degree* to which the asserted codefendant testimony is exculpatory."[91] Moreover, a court should consider "the good faith of the defendant's intent to have a codefendant testify, the possible weight and credibility of the predicted testimony, and the probability that such testimony will materialize, [and] the economy of a joint trial."[92]

In analyzing whether confrontation rights are grounds for severance, *Bruton v. United States* held that the admission of a codefendant's incriminating extrajudicial statements in a joint trial

---

[85] *Mejia*, 2013 WL 3791472, at *2, (citing *United States v. Sears*, 663 F.2d 896 (9th Cir. 1981)).
[86] *Escalante*, 637 F.2d at 1201.
[87] *Id.* at 1202.
[88] *Escalante*, 637 F.2d at 1201.
[89] *Zafiro*, 506 U.S. at 539.
[90] *United States v. Mariscal*, 939 F.2d 884, 886 (9th Cir. 1991) (modification in original) (quoting *United States v. Ford*, 870 F2d 729, 732 (D.C. Cir. 1989)).
[91] *Id*. at 885.
[92] *Id.* (quoting *United States v. Kaplan*, 554 F.2d 958, 966 (9th Cir. 1977)).

12

violates a defendant's right of cross-examination.[93] However, to implicate the Confrontation Clause, the statements must be testimonial.[94] Statements are testimonial if the statement is one that the declarant could reasonably expect to be used in a prosecution, such as affidavits, custodial examinations, or prior testimony.[95] Therefore, to the extent a defendant can demonstrate that denial of substantially exculpatory testimony and confrontation rights will result in manifest prejudice, the joint trial should be severed.[96]

### D. Curability of Potential Prejudice Stemming from a Joint Trial

Limiting instructions to the jury "often will suffice to cure any risk of prejudice" from a joint trial.[97] Jurors are presumed to follow the court's instructions.[98] To reduce the risk of prejudice, the district judge should instruct the jury as to the Government's burden of proof, the jury's duty to consider each individual and each separate charge, the defendant's right to have his case determined from his own conduct and the evidence that may be applicable to him, that attorney speech is not evidence, and that the jury should draw no inferences from a defendant's exercise of his Fifth Amendment right not to testify.[99] The district judge "must actively supervise the trial and, if necessary, reiterate instructions in the wake of prejudicial events."[100] The district court may err for failing to curtail "defendants' respective counsel as they act[] as unsanctioned prosecutors

---

[93] *Bruton v. United States*, 391 U.S. 123, 126 (1968).
[94] *Lucero v. Holland*, 902 F.3d 979, 984 (9th Cir. 2018) (citing *United States v. Crawford*, 541 U.S. 36, 68 (2004).
[95] *Crawford*, 541 U.S. at 51.
[96] *Zafiro*, 506 U.S. at 539 (severance is appropriate where a joint trial would violate a specific trial right).
[97] *Id.*
[98] *United States v. Reyes*, 660 F.3d 454, 468 (9th Cir. 2011) (citing *Zafiro*, 506 U.S. at 540).
[99] *Zafiro*, 506 U.S. at 541.
[100] *Tootick*, 952 F.2d at 1085.

13

during the course of trial."[101] Finally, motions in limine may be used to limit lines of questioning or the admissibility of evidence before its attempted use.[102]

## IV.     ANALYSIS

### A.  F. Coma's Motion to Sever

The Court concludes that F. Coma does not meet his burden to show that separate trials are necessary to avoid violations of his trial rights. The Courts finds that other measures will reduce the risk of prejudice.

1. <u>F. Coma's Arguments with Respect to Mutually Antagonistic Defenses Are Not Sufficient to Require Severance</u>

F. Coma asserts that "the only viable defense for M. Coma and [] Valley is to blame F. Coma."[103] This argument does not require severance for two reasons. One, if M. Coma and Valley disavow knowledge of the package it does not preclude the jury from acquitting F. Coma.[104] The facts of the charged conduct are not "closed in a fashion that does not suggest the intervention of some unknown actor."[105] In fact, as F. Coma's Motion to Sever describes, at least three other people who are not charged in this case were present during portions of the charged conduct.[106] The Court finds that the facts in this case do not require the jury to find F. Coma guilty of the charges in order to accept M. Coma and Valley's likely disavowal of the package. Two, the Court finds that other measures will suffice to address F. Coma's concern that his codefendants "are likely to serve as additional prosecutors."[107] It is the Court's practice to instruct the jury as to their

---

[101] *Id.*
[102] *United States v. Heller*, 551 F.3d 1108, 1111–12 (9th Cir. 2009).
[103] Dkt. 345 at 8.
[104] *See Mayfield*, 189 F.3d at 899–900.
[105] *Tootik*, 952 F.2d at 1081.
[106] *See* Dkt. 345 at 3.
[107] *See id.* at 9.

duty with respect to each defendant and to repeat jury instructions throughout the trial as necessary. The Court also welcomes motions in limine from F. Coma if he seeks to limit certain lines of question or evidence, in accordance with the Federal Rules of Evidence, to reduce the risk of prejudice.

   2.   <u>The Prejudicial Effect on F. Coma of Evidence Against M. Coma and Valley Does Not Warrant Severance</u>

F. Coma argues that the jury will not be able to compartmentalize the Government's evidence that suggests M. Coma and Valley were engaged in drug trafficking.[108] However, F. Coma does not articulate how this evidence would cause clear prejudice in a way that cannot be cured with limiting instructions. F. Coma's argument is that the Government has stronger evidence of drug trafficking against M. Coma and Valley than it has against F. Coma.[109] To warrant severance, the potential prejudice must be of "such magnitude that the defendant [would be] denied a fair trial."[110] It is not enough that the Government has a stronger case against a codefendant.[111] The Court finds that the evidence F. Coma believes the Government will use against M. Coma and Valley is not so prejudicial that F. Coma cannot receive a fair trial. Further, the Court will instruct the jury, as often as necessary to mitigate the risk of prejudice, that the jury must consider the charges, defendants, and evidence individually.

---

[108] *Id.* at 9–10.

[109] Dkt. 345 at 10 ("Conversely, the evidence against F. Coma stems entirely from his conduct with the package. Unlike his co-defendants, there is little evidence beyond that conduct[] showing that he was distributing narcotics." (footnote omitted)).

[110] *Sears*, 663 F.3d at 901.

[111] *Id.*

3. <u>The Admission of Valley's Text Messages Do Not Infringe on F. Coma's Confrontation Clause Rights</u>

F. Coma states that the Confrontation Clause "forbids the admission of a non-testifying co-defendant's out-of-court statements incriminating the defendant."[112] F. Coma argues that the Government cannot introduce text messages from Valley's phone that include F. Coma's name and address without violating F. Coma's rights under the Sixth Amendment.[113] However, only testimonial statements implicate the Confrontation Clause.[114] A text message to a third party is not testimonial because the sender could not reasonably expect a private message would be used in a prosecution.[115] Further, as F. Coma admits, the prejudice could be cured by other means, such as a redaction.[116] Insofar as F. Coma indicates a desire to call Valley to testify, F. Coma has made no showing as to the degree Valey's testimony would exculpate F. Coma and the likelihood that Valley would testify at a separate trial.[117] Therefore, the Court finds that F. Coma's rights under the Confrontation Clause do not justify severance.

4. <u>M. Coma's Motion in Support of Joinder Does Not Support Severance</u>

M. Coma joins F. Coma's Motion to Sever as to F. Coma's arguments on mutually antagonistic defenses and the prejudicial, "spillover effect" of evidence against his codefendants.[118] With respect to mutually antagonistic defenses, M. Coma argues that his "hypothetical defense" is that he was not involved with the package.[119] He asserts this defense

---

[112] Dkt. 345 at 10.
[113] *Id.* at 11.
[114] *Holland*, 902 F.3d at 984; *Crawford*, 541 U.S. at 68.
[115] *See Crawford*, 541 U.S. at 51.
[116] Dkt. 345 at 12. The appropriate remedy for any potential prejudice is best decided with other evidentiary motions so that the Government may indicate if and how it intends to use these text messages at trial.
[117] *See* Dkt. 345 (absence).
[118] Dkt. 354.
[119] *Id.* at 8.

"conflicts" with Valley and F. Coma's likely defenses.[120] However, conflicting defenses are not *per se* prejudicial.[121] As discussed *supra*, severance is not necessary in this case because the facts are not "closed" in such a way that the acquittal of one defendant requires finding another guilty.[122]

As to the "spillover effect," M. Coma also argues that the evidence the Government may use to show Valley's engagement in drug trafficking activity could prejudice M. Coma.[123] The Court again finds that such risk of prejudice could be mitigated by careful jury instructions and evidentiary rulings.

The Court has considered F. Coma's *ex parte* filing and finds it does not change the analysis. Accordingly, F. Coma's motion to sever his case from his codefendants' cases is **DENIED**.

### B. *Valley's Motion to Sever*

1. <u>Valley's Argument that His Defense is Mutually Antagonistic with F. Coma's Does Not Necessitate Severance</u>

Valley asserts that his trial must be severed from F. Coma and M. Coma because Valley's defense is that he was "wholly unaware of the parcel and its contents[] necessarily results in the conviction of his co-defendant(s)."[124] As discussed above, the Court finds that the defenses of F. Coma, M. Coma, and Valley are not mutually exclusive so as to warrant severance. If the Government cannot meet its burden to convict F. Coma or M. Coma, the facts of this case do not logically require the jury to find Valley guilty of the charges, or vice versa.

---

[120] *Id.* at 7–8.
[121] *Zafiro*, 506 U.S. at 538.
[122] *See Tootik*, 952 F.2 at 1081.
[123] Dkt. 354 at 6.
[124] Dkt. 352 at 10.

Valley also indicated to the Court that his counsel intends to "serv[e] as a prosecutor of F.[] Coma."[125] In *United States v. Mayfield*, the Ninth Circuit noted that a similar statement from counsel in that case put the district court on notice that it was "required to grant [a defendant's] severance motions or employ other means of stemming the prejudice."[126] This Court, finding that severance is not necessary, will take other measures to prevent the risk of prejudice to all defendants by instructing the jury that arguments of counsel are not evidence and invites the parties to file motions in limine to prevent the admission of unfairly prejudicial evidence or impermissible lines of questioning before the jury.

    2.  <u>Valley Does Not Meet His Burden to Show that the Need for Exculpatory Testimony Would be Presented at a Separate Trial</u>

Valley states that he intends to call M. Coma and F. Coma at a separate trial.[127] Valley "believes F.[] Coma and M.[] Coma will both testify that [Valley] was completely uninvolved with and unaware of the presence of the suspect parcel."[128] Valley also submits that emails from F. Coma's counsel indicate that F. Coma could at least testify that F. Coma does not know Valley's level of involvement with the package.[129] Valley asserts he "knows that, when called to testify at trial, his co-defendants will affirm his position he was not involved in the package."[130] However, to grant a motion to sever to allow a defendant to present exculpatory codefendant testimony, the district court must weigh the defendant's good faith intent to have a codefendant testify, the likely weight and credibility of the predicted testimony, the exculpatory value of the testimony, the

---

[125] Dkt. 362 at 3.
[126] *Mayfield,* 189 F.3d at 900 n.1.
[127] Dkt. 352 at 11.
[128] *Id.* at 12.
[129] Dkt. 362 at 3–4.
[130] *Id.* at 4.

probability that the codefendant will actually testify, and the judicial economy of a joint trial.[131] The Court finds that Valley has a good faith intent to call M. Coma and F. Coma to testify and that such testimony, if Valley is correct as to its contents, would have moderate exculpatory value. However, the Court finds that the likely weight and credibility of codefendant testimony is low given F. Coma's assertion that he does not know Valley's level of involvement. The Court also finds that Valley has not shown that the testimony is likely to materialize, as codefendant witnesses may invoke their Fifth Amendment right not to provide incriminating testimony.[132] Thus, the Court finds that the interests of judicial economy outweigh Valley's desire to call F. Coma and M. Coma to testify at a separate trial.

### 3. A Joint Trial Does Not Violate Valley's Confrontation Clause Rights

Valley argues that his Confrontation Clause rights would be violated by the admission of text messages between Valley and M. Coma. As discussed above, the text messages do not implicate the Confrontation clause as the text messages are not testimonial. Thus, the Court finds this is not a sufficient basis to sever the trials.

### 4. Severance is Not Required to Prevent Undue Prejudice to Valley

Valley argues, as do his codefendants, that he is prejudiced "by association" by the evidence against F. Coma and M. Coma.[133] As discussed above, severance is not required merely because the Government has a stronger case against a codefendant.[134] The Court is assured that any risk of prejudice can be cured with careful jury instructions.

---

[131] *Mariscal*, 939 F.2d at 885.
[132] *See United States v. Tsui*, 646 F.2d 365, 367 (9th Cir. 1981).
[133] Dkt. 352 at 14.
[134] *Supra*, at 10–11, 15; *Sears*, 663 F.2d at 901.

*5.* The Facts of this Case Are Distinguishable from *Mayfield*

In his Reply, Valley argues that his case is analogous to *United States v. Mayfield*.[135] While Valley correctly states the applicable law and central facts of *Mayfield*, the cases are distinguishable. In *Mayfield*, police, pursuant to a search warrant, observed the two defendants in an apartment with what appeared to be illegal substances and evidence of drug distribution.[136] Though the apartment belonged to codefendant Manyale Gilbert, Gilbert argued that the drugs were in codefendant Jerry Mayfield's exclusive control.[137] The Ninth Circuit found reversable error because (1) Gilbert's defense required the conviction of Mayfield, (2) there was no evidence of a third party owner of the drugs, and (3) the district court did not take sufficient actions at trial to limit prejudice to Mayfield.[138] The Court finds that, unlike *Mayfield*, the facts of this case do not require severance because the codefendants' defenses are not mutually exclusive, there is evidence to suggest the involvement of third parties, and the Court will take stringent action at trial to avoid prejudice to the defendants.

Accordingly, Valley's Motion to Sever is **DENIED**.

## V.     CONCLUSION

The Court acknowledges that the defendants described several issues that present a risk of prejudice. However, the Court must weigh the risk of prejudice against the preference for joint trials and judicial economy.[139] The Court welcomes motions in limine to resolve issues of prejudice before trial to ensure a fair trial for all parties. The Court is confident that careful jury instructions will ameliorate the risk of prejudice to the defendants.

---

[135] Dkt. 362 at 1.
[136] *Mayfield*, 189 F.3d at 897.
[137] *Id.* at 900.
[138] *Id.* at 900 & n.1.
[139] *Zafiro*, 506 U.S. at 938.

Case 3:22-cr-00044-TMB-MMS     Document 387     Filed 02/10/25     Page 20 of 21

For the foregoing reasons, F. Coma's Motion to Sever at Docket 345 is **DENIED** and Valley's Motion to Sever at Docket 352 is **DENIED**.


IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 10th day of February, 2025.

/s/ *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE